# EXHIBIT A

NORTH CAROLINA     FILED     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FORSYTH COUNTY     21 CVS 3951

2021 AUG -4 P 1: 25

DONNA KENT, individually and as )
personal representative of the late Sandor )
Szabo, )
                                         )
      Plaintiff,                         )
                                         )
vs.                                           ) **COMPLAINT**
                                         )
WAKE FOREST UNIVERSITY,    )
                                         )
      Defendant.                     )

RECEIVED BY
AUG -9 2021
WAKE FOREST UNIVERSITY
LEGAL DEPARTMENT

Donna Kent, individually and on behalf of the estate of her deceased son Sandor Szabo (collectively, "Plaintiff") brings this complaint against Wake Forest University ("Wake Forest"), for wrongful death, intentional infliction of emotional distress, assault, and battery on the basis of respondeat superior and direct negligence for the willful misconduct of Coach Jamill Jones in causing the death of Sandor Szabo while Coach Jones was on a recruiting trip and acting within the scope of his employment at Wake Forest University.

## BRIEF SUMMARY OF THE CASE

1. Wake Forest University sent Assistant Men's Basketball Coach Jamill Jones on a business trip to New York.

2. While in New York, pursuant to his work with Wake Forest University, he fatally struck Mr. Sandor Szabo in a one-punch homicide on a New York sidewalk.

3. This is a wrongful death action that seeks to hold Wake Forest University ("Wake Forest") accountable for its actions and the actions of its employee Jamill Jones that resulted in Mr. Sandor's tragic death.

## PARTIES

4. Plaintiff Donna Kent is an individual and resident of Raleigh, North Carolina.

5. Defendant Wake Forest University is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Winston-Salem, North Carolina. Defendant Wake Forest was the employer of Jamill Jones at the time he wrongfully caused the death of Mr. Szabo.

## JURISDICTION AND VENUE

6. This court has personal jurisdiction over Wake Forest pursuant to N.C. Gen. Stat. § 1-75.4 (1), and Rule 4(j) of the North Carolina Rules of Civil Procedure because Wake Forest is principally located within the jurisdiction.

7. Venue is appropriate in Forsyth County, North Carolina pursuant to N.C. Gen. Stat. § 1-82 because Defendant Wake Forest is located there.

## STATEMENT OF FACTS

8. Sandor Szabo was a thirty-five-year-old digital marketing executive for a company based in Fort Lee, New Jersey but worked remotely from Florida. Mr. Szabo was five feet eleven inches tall and weighed approximately 183 pounds.

9. Coach Jones is a former collegiate athlete and experienced coach. At the time of the incident, Coach Jones was employed by Wake Forest as an assistant men's basketball coach under Head Coach Danny Manning for Wake Forest's NCAA Division I men's basketball program. He previously held coaching positions at University of Coastal Florida, Virginia Commonwealth University, and Florida Gulf Coast University. Coach Jones was a collegiate

2

basketball player at Arkansas Tech University. Prior to coaching college basketball, Coach Jones was a revenue analyst for the Department of Homeland Security Federal Protective Services. On information and belief, Coach Jones is six feet five inches tall and weighs approximately 220 pounds.

10. Wake Forest is a private university that employed Coach Jones since at least May 2017. Wake Forest was responsible for training and supervising Coach Jones in the performance of his job duties. Wake Forest employed Coach Jones to perform duties that included travel to identify and recruit players for Wake Forest's men's basketball program and facilitate their transition to the university. On information and belief, Wake Forest trained Coach Jones on first aid.

11. Wake Forest sent Coach Jones to the New York metropolitan area on multiple occasions to recruit basketball players and perform business on behalf of the Wake Forest basketball program.

12. In late July 2018, Mr. Szabo travelled to New York to attend a tradeshow and then his stepsister's wedding. Mr. Szabo attended the wedding on August 4, 2018 and the subsequent reception, which continued into the evening at a venue, The Foundry, in the New York City borough of Queens.

13. Wake Forest sent Coach Jones to the New York metropolitan area on or about August 4, 2018 to visit a recruit of the Wake Forest men's basketball program and attend his going away party prior to joining the Wake Forest program. Coach Jones was acting in the course and scope of his employment to mentor the new incoming student athlete and facilitate his transition to the university. This was the primary purpose of Coach Jones' trip to New York.

14. Mr. Szabo left the wedding venue with the wedding party and travelled with them to a nearby hotel, The Paper Factory. At around 1:00 a.m. on August 5, 2018, Mr. Szabo ordered a Lyft to take him back to his own hotel, a Howard Johnson on 12th Street in Queens. His Lyft travelled the wrong direction and left him in the area of 29th Street and 41st Avenue in Long Island City.

15. Mr. Szabo attempted at least six calls to Lyft to arrange for another driver to pick him up. Looking for his ride, Mr. Szabo approached several vehicles on 29th Street near 41st Avenue to inquire as to whether those vehicles were his Lyft ride.

16. One of the vehicles that Mr. Szabo approached was a white 2019 BMW SUV that Coach Jones was driving with his fiancée, Djenane F. Paul. At or about 1:42 a.m., Mr. Szabo approached Coach Jones' vehicle and waved his arm as if hailing a ride after Coach Jones passed him while driving down 29th Street. Coach Jones then reversed onto 41st Avenue and came to a stop at the intersection. After approaching the rear passenger side of Coach Jones' vehicle, Mr. Szabo turned and retreated back across the street.

17. While Mr. Szabo walked away, Coach Jones exited his vehicle and sprinted to catch up with him. As Coach Jones closed in, Mr. Szabo (5' 10") sought refuge from the imposing Coach Jones (6' 5") behind a mailbox and put his hands up to shield his face in a moment of terror.

18. Without warning or provocation, Coach Jones (220 lbs) planted his feet, cocked back his right fist and struck Mr. Szabo (183 lbs) in the face with full force. The punch was so forceful that it knocked Mr. Szabo's teeth through his lower lip and lacerated the tissues on the left side of his face. The blow also caused Mr. Szabo a sudden rotational injury to his brain stem–an ultimately fatal injury.

4

19. Mr. Szabo's body slammed into the ground following the punch and his head bounced against the concrete curb. The impact fractured Mr. Szabo's skull in two places and resulted in extensive brain damage. According to witnesses and security camera footage, as Mr. Szabo lay unconscious on the sidewalk, his legs twitched and blood poured from his ears, face, and mouth, choking his airway.

20. Meanwhile, Coach Jones looked down at Mr. Szabo and casually walked back towards his vehicle while glancing back once more. Coach Jones entered his vehicle and sped away from the scene. He did not call 911. He did not apply his Wake Forest training to tend to the unconscious and choking Mr. Szabo. Nor did he attempt to get help from nearby persons or residences.

21. Two witnesses to Coach Jones' assault on Mr. Szabo called 911 and tended to Mr. Szabo, propping him up against a car to prevent him from choking on his own blood. Paramedics transported Mr. Szabo to New York Presbyterian Hospital Weill Cornell. Mr. Szabo never regained consciousness, and died in this hospital two days later.

22. On information and belief, Coach Jones called his fiancée's cousin, Police Officer David McCall, for advice after seeing police officers and paramedics tending to an unconscious Mr. Szabo from his hotel room. Coach Jones, however, did not return to the scene or identify himself to officers that morning but instead prepared to flee the state.

23. Despite the best efforts of paramedics and doctors, Mr. Szabo was pronounced braindead on Tuesday, August 7, 2018. Medical professionals kept Mr. Szabo's body alive for an additional two days to harvest his vital organs, including his heart, kidneys, pancreas, liver, and lungs. Those organs saved the lives of four recipients.

24.     The medical examiner's office ruled Mr. Szabo's death a homicide as a result of blunt impact injury of the head with brain injury. Mr. Szabo suffered blunt impact injury to the head when Coach Jones struck his face and when his head hit the concrete curb.

25.     On information and belief, Wake Forest knew Coach Jones was involved with the assault very shortly after the incident, by the late morning hours. Yet, Wake Forest did nothing to disavow itself of Coach Jones' conduct or actions and in fact continued to employ him and engage him in the basketball program and for the benefit of the basketball program including the recruitment of players. In fact, Wake Forest made the announcement about the incident on August 7 in a friendly atmosphere where Coach Jones was joined and supported by Coach Danny Manning, Randolph Childress, Steve Woodberry and a prominent Wake Forest alumnae.

26.     On information and belief, after the assault, Coach Jones returned to North Carolina on transportation paid for by Wake Forest to attend another work-related event.

27.     On information and belief, on or about August 5, 2018, Coach Jones attended a gala hosted by Wake Forest as Mr. Szabo lay in critical condition at the hospital.

28.     Wake Forest ratified Coach Jones' actions by their conduct after the assault and with full knowledge of Jones' actions.

29.     Finally, on August 9, 2018, Coach Jones turned himself in to the police in Queens.

30.     On information and belief, Wake Forest did not dismiss Coach Jones for the assault but merely put him on leave following his arrest and allowed him to voluntarily resign eight months later. Wake Forest continued to enjoy the fruits of Coach Jones' labor, including signing Ismael Massoud, Coach Jones' recruiting target.

31. The Queens District Attorney charged Jones with third-degree assault—a misdemeanor—for his fatal attack on Mr. Szabo. A jury convicted Coach Jones following a criminal trial held on February 6, 2020.

32. On July 23, 2020, a New York judge sentenced Coach Jones to three years of probation, 1,500 hours of community service, and a $1,000 fine, but no jail time.

33. A civil action is now the only means to obtain justice for Mr. Szabo and his family who have suffered tremendously because of his death. As Ms. Kent stated to Coach Jones' at his sentencing: "I will never get to experience the joy of being Sandor's mother again. I can't believe this is my life—a mourning mother. You have changed my life forever and destroyed the person I used to be."

34. On information and belief, Coach Jones' duties as an assistant basketball coach for Wake Forest included mentoring players outside of basketball, providing guidance and assistance to student athletes on a range of personal issues, and facilitating their transition to the college environment.

35. On information and belief, Coach Jones was in New York on August 4-5, 2018, to perform mentoring and coaching duties on behalf of the Wake Forest men's basketball program.

36. On information and belief, Wake Forest sent Coach Jones to the New York metropolitan area on or about August 4-5, 2018 to visit and mentor Ismael Massoud, an incoming player for Wake Forest's basketball program, at Massoud's going away party.

37. On information and belief, Wake Forest was aware that Coach Jones was in New York in his capacity as an assistant basketball coach and condoned his travel to nurture a relationship with an incoming Wake Forest student athlete and/or conduct other Wake Forest business.

7

Case 1:21-cv-00694-LCB-JLW   Document 1-1   Filed 09/07/21   Page 8 of 19

38. Accordingly, Coach Jones was an agent, servant, and/or employee of Wake Forest acting within the course and scope of his employment and/or agency during his time in New York. Therefore, Wake Forest is vicariously liable for Jones' actions under the doctrine of *respondeat superior*.

39. Alternately, Wake Forest ratified his actions because Wake Forest had full knowledge of his actions and did not disavow Jones or do anything to recant or distance itself from his actions for many hours after the incident.

## Wake Forest's Negligence

40. In summary, Coach Jones, was driving in a busy city filled with potential witnesses, security cameras, and other surveillance equipment. He stopped and jumped out of his vehicle in the middle of a through-street. Without reason or justification, Jones left his then-fiancé alone in the vehicle, pursued Mr. Szabo, and punched Mr. Szabo in the face with lethal force. Then, despite (or because) the extent of Mr. Szabo's injuries was apparent, Jones calmly returned to his vehicle and left the scene of the attack.

41. It is rare for a person to commit such an extreme, callous, unjustified, and irrational attack on a complete stranger for the first time at age thirty-seven. Quite the contrary, such an attack is generally preceded by many prior incidents of violence—or other acts of moral turpitude evidencing a disregard for society's laws and other rules—committed by the perpetrator throughout his life.

42. Accordingly, Plaintiff is informed and believes that Jones committed, participated in, or otherwise engaged in one or more incidents of violence—or other acts of moral turpitude evidencing a disregard for society's laws and other rules—prior to his attack on Mr. Szabo.

8

43. Plaintiff is informed and believes that Defendant either knew or had reason to know Jones' prior incidents of violence—or other acts of moral turpitude evidencing his disregard for society's laws and other rules—prior to the time that it caused Jones to go to New York on or about August 4, 2018.

44. Coach Jones' previous behavior, as was discoverable by Wake Forest and/or noticed by Wake Forest, indicated that Coach Jones had a propensity for violence and misbehavior that could cause harm the type of which occurred in this case.

45. As a result of the actions described here in, Plaintiff has received damages in excess of $25,000.

## FIRST CAUSE OF ACTION

### Wrongful Death

### (Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)

46. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 45 as if fully set forth herein.

47. As more fully set forth above, on August 5, 2018, Wake Forest Coach Jamill Jones killed Sandor Szabo in an unjustified one-punch homicide.

48. Coach Jones' attack was wanton and malicious. Coach Jones had no justification for the attack. Shortly prior to the attack, Coach Jones was safely inside his BMW SUV and Mr. Szabo was walking away down the street. However, Coach Jones decided to, and did, exit his vehicle and charge at Mr. Szabo with the intent to strike or otherwise batter him.

49. Coach Jones struck Mr. Szabo with enough force to push Mr. Szabo's teeth through his lower lip and cause a sudden rotational injury to his brainstem. Mr. Szabo was left unconscious and bleeding from his head.

50. Coach Jones looked back at a heavily injured Mr. Szabo and, despite Mr. Szabo's clear need for immediate medical assistance, walked to his BMW SUV, and fled.

51. On August 7, 2018, as a direct and proximate result of Jones' attack, Mr. Szabo died. Medical examiners determined that Mr. Szabo died of blunt impact injury of the head with brain injury.

52. As more fully set forth above, Coach Jones was an agent, servant, and/or employee of Defendant Wake Forest acting within the course and scope of such employment and/or agency during his time in New York. Alternately, Wake Forest ratified Coach Jones' actions. Therefore, Wake Forest is responsible for the above-described actions of Coach Jones and for its negligence in employing him.

53. Plaintiff suffered damages as a result of Defendant's action resulting in Mr. Szabo's death and is entitled to recover from Defendant in a fair and just amount to be determined by a jury, including at least: Expenses for the care and treatment incident to the injuries resulting in Mr. Szabo's death; Compensation for pain and suffering of Mr. Szabo prior to his death; The reasonable funeral expenses of Mr. Szabo; Loss of Mr. Szabo's reasonably expected net income to his beneficiary, Donna Kent; Loss of the services, protection, care, and assistance of Mr. Szabo to his beneficiary, Donna Kent; Loss of the society, companionship, comfort, guidance, kindly offices, and advice of Mr. Szabo to his beneficiary, Donna Kent; Any further pecuniary losses deemed fair and just by the Court; and interest upon the principal sum recovered from the date of the pertinent incident.

54. Plaintiff further claims such damages as Mr. Szabo may have suffered between the time of injury and the time of death and for the recovery of which the decedent might have maintained an action had death not ensued including, but not limited to, mental anguish, physical

disability, conscious pain and suffering, pre-impact terror, and further damage considering the aggravating circumstances attendant upon the fatal injury.

55. Plaintiff seeks all damages allowed by G.S. § 28A-18-2.

## SECOND CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)

56. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 55 as if fully set forth herein.

57. As more fully set forth above, on August 5, 2018, Wake Forest Coach Jamill Jones killed Sandor Szabo in an unjustified one-punch homicide.

58. Coach Jones' conduct was extreme and outrageous. Mr. Szabo posed no threat and was, in fact, walking away from Coach Jones' vehicle when Coach Jones chased after Mr. Szabo and attacked him. Coach Jones had no justification to exit his SUV, chase down Mr. Szabo, and/or punch Mr. Szabo in the face.

59. On information and belief, Coach Jones stands six feet five inches tall and weighs 220 pounds, while Mr. Szabo was five feet eleven inches tall and weighed approximately 183 pounds. Coach Jones went beyond all possible bounds of decency when he viciously attacked an unarmed, and smaller Mr. Szabo.

60. Coach Jones' attack was intended to and in fact caused Mr. Szabo severe emotional distress. When the much bigger Coach Jones left his SUV to rush at Mr. Szabo, Mr. Szabo desperately backed away in apprehension and fear. Unable to escape and in imminent fear, Mr. Szabo attempted to hide behind a mailbox and tried to cover his face.

61. As a direct and proximate result of Coach Jones' attack and the moments preceding, Mr. Szabo suffered severe emotional distress for the remainder of his life, including at least suffering in contemplation of his impending battery and death, and shock and terror.

62. On information and belief, additionally, Wake Forest ratified Coach Jones' actions with full knowledge of them.

## THRID CAUSE OF ACTION

### Assault

### (Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)

63. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 62 as if fully set forth herein.

64. As more fully set forth above, on August 5, 2018, Coach Jones without provocation exited his SUV and ran towards Mr. Szabo.

65. Coach Jones rushed at Mr. Szabo as if he intended to strike or otherwise batter Mr. Szabo, and in fact raised his fist to hit, and did hit, Mr. Szabo.

66. Coach Jones' assault was egregious and wrongful. It occurred without provocation and left Mr. Szabo unconscious, bleeding profusely, and choking on his own blood.

67. As a direct and proximate result of Coach Jones' attack and the moments leading up to that attack, Mr. Szabo felt reasonable apprehension. As evidence of Mr. Szabo's apprehension, he attempted to back away from Coach Jones.

68. As more fully set forth above, Coach Jones was an agent, servant, and/or employee of Defendant Wake Forest acting within the course and scope of such employment and/or agency during his time in New York, or alternately ratified his actions. Therefore, the above-described actions of Jones are imputed to Defendant Wake Forest.

12

69. As a direct and proximate result of Defendant's actions, Plaintiff was injured in a sum to be proven at trial.

## FOURTH CAUSE OF ACTION

### Battery

### (Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)

70. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 69 as if fully set forth herein.

71. As more fully set forth above, on August 5, 2018, Coach Jones intentionally struck Mr. Szabo in the face.

72. Mr. Szabo did not consent to being struck, and in fact tried to back away from Coach Jones.

73. Coach Jones' assault was egregious and wrongful. It occurred without provocation and left Mr. Szabo unconscious, bleeding profusely, and choking on his own blood.

74. As a direct and proximate result of Coach Jones' attack, Mr. Szabo suffered from blunt force trauma to the head. Coach Jones' punch was so forceful as to knock Mr. Szabo's teeth through his lip, and caused a sudden rotational injury to his brainstem.

75. As more fully set forth above, Coach Jones was an agent, servant, and/or employee of Defendant Wake Forest acting within the course and scope of such employment and/or agency during his time in New York, or alternately Wake Forest ratified Coach Jones' actions. Therefore, the above-described actions of Coach Jones are imputed to Defendant Wake Forest.

76. As a direct and proximate result of Defendant's actions, Plaintiff was injured in a sum to be proven at trial.

13

## FIFTH CAUSE OF ACTION

### Negligence

**(Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)**

77. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 76 as if fully set forth herein.

78. As more fully set forth above, on August 5, 2018, Coach Jones struck Mr. Szabo in the face. As a result, Mr. Szabo fell to the ground and was very obviously unconscious, bleeding profusely from his head, choking on his own blood, and in dire need of aid.

79. On information and belief, Coach Jones received first aid training from Wake Forest, and/or other previous employers, and, therefore, should have recognized Mr. Szabo's dire state.

80. Coach Jones created the danger facing Mr. Szabo by harming Mr. Szabo, who visibly suffered a serious injury as a result and clearly needed immediate assistance or medical attention. Coach Jones looked back at Mr. Szabo at least twice after he caused the harm and recognized, or should have recognized, Mr. Szabo's immediate need of aid.

81. Coach Jones reasonably owed a duty to provide assistance to Mr. Szabo, including but not limited to: (i) calling, or directing bystanders to call, emergency services; (ii) rendering first aid; and (iii) otherwise rendering assistance to Mr. Szabo until emergency services arrived.

82. Coach Jones breached his duties by fleeing the scene of the attack instead of rendering aid to Mr. Szabo or even calling for help.

83. Coach Jones' breach of duty was egregious and wrongful. Coach Jones deliberately attacked Mr. Szabo, but rather than render aid as he was trained to

do, Coach Jones left Mr. Szabo unconscious, bleeding, choking, and dying on the side of the road at 1:42 in the morning.

84. As more fully set forth above, Coach Jones was an agent, servant, and/or employee of Defendant Wake Forest acting within the course and scope of such employment and/or agency during his time in New York, or alternately Wake Forest ratified Coach Jones' actions. Therefore, the above-described actions of Coach Jones are imputed to Defendant Wake Forest.

85. As a direct and proximate result of Defendant's actions, Plaintiff was injured in a sum to be proven at trial.

## SIXTH CAUSE OF ACTION

### Negligent Hiring

### (Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)

86. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 85 as if fully set forth herein.

87. Plaintiff is informed and believes that, Prior to being hired by Defendant, Jones had committed, participated in, or otherwise engaged in one or more incidents of violence—or other acts of moral turpitude evidencing a disregard for society's laws and other rules. For this reason, Jones was unfit for any duties which would require him to be beyond the immediate supervision of Defendant and Wake Forest had noticed his propensity for violence and misbehavior.

88. At the time that Defendant hired Jones, it knew or had reason to know that Jones had committed, participated in, or otherwise engaged in one or more incidents of violence—or other acts of moral turpitude evidencing a disregard for society's laws and other rules. Yet, Defendant hired Jones regardless.

89. Defendant owed Mr. Szabo a duty of reasonable care. For example, Defendant owed a duty of reasonable care to the definite class of persons comprising those persons with

15

whom Jones would interact or otherwise have contact during the time[1] that Jones was traveling on Defendant's behalf. At all times relevant to the above-captioned action, Mr. Szabo was a member of this class of persons.

90. Further, Defendant owed a duty of reasonable care to the definite class of persons comprising those persons who may come into contact with Jones by virtue of being located within the geographical region to which Defendant caused Jones to travel in the course of his employment. At all times relevant to the above-captioned action, Mr. Szabo was a member of this class of persons.

91. Jones' wrongful conduct, committed in the course of engaging in Defendants' business, was the cause in fact and proximate cause of Mr. Szabo's harm.

92. As a direct and proximate result of Defendant's actions, Plaintiff was injured in a sum to be proven at trial.

## SEVENTH CAUSE OF ACTION

### Negligent Retention and Supervision

### (Brought by Plaintiff as Personal Representative of the Estate of Sandor Szabo Against Wake Forest University)

93. Plaintiff incorporates, repeats, and re-alleges the foregoing allegations of paragraphs 1 through 92 as if fully set forth herein.

94. Plaintiff is informed and believes that, prior to or after being hired by Defendant, Jones had committed, participated in, or otherwise engaged in one or more incidents of violence—or other acts of moral turpitude evidencing a disregard for society's laws and other rules.

95. Defendant knew or had reason to know that Jones had committed, participated in, or otherwise engaged in one or more incidents of violence—or other acts of moral turpitude

---

[1] Specifically, from the time that Jones commenced the trip by leaving his normal place of employment to the time that he returned to his normal place of employment.

16

evidencing a disregard for society's laws and other rules. Yet, Defendant retained and failed to supervise Jones regardless. These acts gave Wake Forest notice of Coach Jones' propensity for violence and misbehavior.

96. Defendant owed Mr. Szabo a duty of reasonable care. For example, Defendant owed a duty of reasonable care to the definite class of persons comprising those persons with whom Jones would interact or otherwise have contact during the time[2] that Jones was traveling on Defendant's behalf. At all times relevant to the above-captioned action, Mr. Szabo was a member of this class of persons.

97. Further, Defendant owed a duty of reasonable care to the definite class of persons comprising those persons who may come into contact with Jones by virtue of being located within the geographical region to which Defendant caused Jones to travel in the course of his employment. At all times relevant to the above-captioned action, Mr. Szabo was a member of this class of persons.

98. Jones' wrongful conduct, committed in the course of engaging in Defendants' business, was the cause in fact and proximate cause of Mr. Szabo's harm.

99. As a direct and proximate result of Defendant's actions, Plaintiff was injured in a sum to be proven at trial.

---

[2] Specifically, from the time that Jones commenced the trip by leaving his normal place of employment to the time that he returned to his normal place of employment.

17

**WHEREFORE**, Plaintiff respectfully prays:

1. That this Court grant Judgment in favor of the Plaintiff;
2. Awarding compensatory, statutory, and non-economic damages against and Wake Forest University;
3. Reasonable costs and attorneys' fees incurred by Plaintiff in bringing this action as allowed by law;
4. Trial by jury; and
5. Such other relief as the Court deems just and proper.

This the 4th day of August, 2021.

Andrew L. Fitzgerald
North Carolina State Bar # 31522
D. Stuart Punger, Jr.
North Carolina State Bar #35517
FITZGERALD LITIGATION
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101
Telephone: 336-793-8536
Fax: 336-793-4696
andy@fitzgeraldlitigation.com
stuart@fitzgeraldlitigation.com

18